UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROCHONA MAJUMDAR, <br><br> Plaintiff, <br><br> vs. <br><br> C. CHRISTINE FAIR, <br><br> Defendant. | Case No. 1:21-cv-00928 <br><br> Hon. Jorge L. Alonso |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S RULE 12(b)(2) MOTION TO DISMISS**

**INTRODUCTION AND FACTUAL BACKGROUND**

Defendant C. Christine Fair ("Dr. Fair") is a full professor at Georgetown University. Prior to her promotion to full professor, she was a distinguished Georgetown University "Georgetown") professor with a Ph.D. from the Department of South Asian Languages and Civilization ("SALC") from the University of Chicago ("UChicago"). Compl. ¶ 3; Dr. Fair Declaration ¶¶ 3-4. Dr. Fair left Illinois in 1997 and completed her Ph.D. remotely in California. Compl. Exh. A at p. 6 of 12; Fair Decl. ¶ 4. Dr. Fair now lives and works in Virginia, and has since 2005. Compl. ¶ 3; Fair Decl. ¶ 8.

Dr. Fair is outspoken against sexual harassment and discrimination perpetrated by persons in positions of authority in academic institutions, government agencies and in society worldwide. Fair Decl. ¶ 5. She publishes her thoughts and opinions on this subject on her publicly accessible blog and on Twitter. She has written articles on the subject featured in national and international news media publications. *Id*. ¶ 5.

Whether on her blog, Twitter or other social media platforms like Facebook, Dr. Fair has voiced opinions critical of other SALC professors, including Plaintiff Rochona Majumdar, a

1

UChicago professor. Dr. Fair has also used her online platform to amplify the sexual harassment and discrimination claims of other academics, including allegations against Plaintiff by multiple SALC graduate students and faculty. *Id*. ¶ 6. One such student is Mr. Zain Jamshaid, a SALC graduate student who worked for Plaintiff at UChicago. *Id.*

As laid out in the Complaint,[1] in 2020 Mr. Jamshaid came forward alleging that Plaintiff had sexually assaulted him as well as discriminated against him based upon his national origins (Pakistan), his faith (Ahmadi), his sexual orientation as well as low-caste status. Compl. ¶ 10; Fair Decl. ¶ 7. Mr. Jamshaid began making these allegations within the UChicago community in early March 2020, and eventually filed a formal Title IX complaint with UChicago in the spring of 2020. Compl. ¶¶ 10-11. Plaintiff denies harassing Mr. Jamshaid and asserts that his narrative about her "is demonstrably false and a blatant attempt to destroy her livelihood and her career." Compl. ¶ 12.

Dr. Fair believes Mr. Jamshaid and has supported him in his fight against Plaintiff and UChicago. Fair Decl. ¶ 7. Specifically, from her home in Virginia and without stepping foot in Illinois, Dr. Fair used her online platform and social media presence to elevate Mr. Jamshaid's story throughout 2020. *Id*. ¶ 9. Per Plaintiff, "[Dr. Fair's] position as a tenured professor at Georgetown lent his story the patina of authenticity and her public blog and social media presence provided an audience he might not otherwise have reached." Compl. ¶ 12. Indeed, Dr. Fair's blog and Twitter are publicly accessible to anyone with an internet connection. Compl. ¶¶ 14, 15; Fair Decl. ¶¶ 10-11. Her Twitter account "had over 40,000 followers at [March 14, 2020] and throughout the entirety of 2020 and to present." Compl. ¶ 15. Dr. Fair's Twitter following is

---

[1] The Complaint alleges Dr. Fair has waged a defamatory campaign against Plaintiff "since 2017," and incorporates various tangential "factual background" from 2017 and also dating back more than two decades, to the early 1990s. For the purposes of this motion, Dr. Fair focuses only on the allegations purportedly giving rise to Plaintiff's causes of action for defamation (Count I) and false light (Count II), claims for which the statute of limitations is only one year. 735 ILCS 5/13-201.

mostly international – 54% of the accounts following her are located in South Asia, fewer than 25% of her followers are located in the U.S., and only 0.1% are located in Illinois. Fair Decl. at ¶ 11.

On February 19, 2021, Plaintiff filed the instant Complaint alleging counts against Dr. Fair for Defamation (Count I) and False Light (Count II) in connection with statements published on her blog, Twitter, and Facebook. Compl. ¶¶ 14-20, 22-38, 43.

## DISMISSAL STANDARDS

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *See, e.g., Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). In deciding a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(2), the Court takes as true all well-pleaded facts alleged in the Complaint and resolves any factual disputes in the affidavits in favor of the plaintiff. *Felland v. Chilon,* 682 F.3d 665, 672 (7th Cir. 2012). If in the face of a Rule 12(b)(2) motion the plaintiff cannot establish a *prima facie* case of personal jurisdiction, the court may dismiss the case for lack of personal jurisdiction based solely on written materials submitted to the Court. *See, e.g., Mi-Jack Sys. & Tech., LLC v. Babaco Alarm Sys.*, WL 6131476 (N.D. Ill. Nov. 20, 2013) (dismissing for lack of personal jurisdiction without evidentiary hearing). Conclusory allegations of personal jurisdiction are insufficient. *See, e.g., Cook Assocs. v. E.G. Snyder Co.*, 1988 WL 139258, *2 (N.D. Ill. Dec. 21, 1988).

## ARGUMENT

It is a plaintiff's burden to establish personal jurisdiction. *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Plaintiff sidesteps the issue of jurisdiction in the Complaint here, alleging only generally that "[p]ersonal jurisdiction is proper under 735 ILCS 5/2-209." Compl. ¶ 6. "A federal court in Illinois may exercise personal

jurisdiction over a defendant if the Illinois long-arm statute would allow it." *Bittman v. Fox*, 2016 WL 2851566 at *3 (N.D. Ill. May 16, 2016); Rule 4(k)(1)(A). Because the Illinois long-arm statute contains a catch-all provision permitting personal jurisdiction if it would be authorized by the Constitutions of either Illinois and/or the United States, the Illinois statutory and federal constitutional requirements merge. *Bittman*, 2016 WL 285166 at *3; 735 ILCS 5/2-209(c).

This Court lacks personal jurisdiction over Dr. Fair. There are two types of personal jurisdiction – general and specific. The nature of a defendant's contacts with the forum state determines not only whether personal jurisdiction is proper, but also its scope—that is, whether general or specific jurisdiction is proper. *See, e.g., Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984)). As described below, this Court lacks both general and specific personal jurisdiction over Dr. Fair.

I. **This Court Lacks General Personal Jurisdiction Over Dr. Fair**

General personal jurisdiction exists where the defendant's continuous operations within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).

Dr. Fair's domicile is Virginia, not Illinois. Compl. ¶ 6; Fair Decl. ¶ 8. As such, "the threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701 (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d at 787 n. 16). "Isolated or sporadic" contacts are not sufficient to

4

establish general personal jurisdiction. *Tamburo*, 601 F.3d at 701 (noting that occasional visits to the forum state are insufficient for general jurisdiction). That is because "sporadic contacts with Illinois do not approach the level of 'continuous and systematic' contacts necessary to establish general personal jurisdiction." *Id.* at 701-02. Importantly, operating a public Internet website, without more, is insufficient on its own to establish general jurisdiction. *Id.* at 701. *See also, Bittman,* 2016 WL 2851566 at *3, 5 (posting video of and critical commentary about plaintiff, an Illinois resident employed by an Illinois library, on defendant's "Safe Libraries" blog failed to show "continuous operations" or contacts that could possibly subject defendant, a New Jersey resident, to general personal jurisdiction in Illinois).

Dr. Fair does not own, use or possess any real property in Illinois. Fair Decl. ¶ 12. She has no bank accounts here. *Id*. ¶ 13. She conducts no business in Illinois and is not a party to any contracts with Illinois citizens. *Id.* ¶ 14. Dr. Fair attended UChicago in the 1990s and she left Illinois in 1997, more than twenty years ago. *See* Compl. Exh. A at p. 6 of 12; Fair Decl. ¶ 4. She has lived and worked in Virginia since 2005. Compl. ¶ 3; Fair Decl. ¶ 8. In short, she has no continuous and systematic contact with Illinois and never expected to be sued here. Fair. Decl. ¶ 15.

Dr. Fair operates a blog and is active on Twitter and other social media. *See, e.g.,* Compl. ¶¶ 14-15. Her blog is publicly available and accessible to anyone with an internet connection. Compl. ¶ 14. Dr. Fair's Twitter is also publicly accessible. Compl. ¶ 15; Fair Decl. ¶ 10. Fewer than 25% of her Twitter followers are located in the U.S., and only 0.1% are located in Illinois. Fair Decl. ¶ 11.

Dr. Fair publishes on her blog, sends tweets, and posts to Facebook from Virginia, where she lives and works. Fair Decl. ¶ 10. Plaintiff does not allege that any of the publications complained of were posted while Dr. Fair was physically present in Illinois. Plaintiff does not allege (nor could she prove) that Dr. Fair set foot in Illinois at any time during the year preceding

the Complaint. In fact, the last time Dr. Fair was physically present in Illinois was in April of 2019, for a brief visit for purposes entirely unrelated to Plaintiff or the events at issue in this lawsuit. Fair Decl. ¶ 16.

Accordingly, this Court lacks general personal jurisdiction over Dr. Fair. *See Tamburo*, 601 F.3d at 701. Dr. Fair simply does not have such "continuous and systematic" contacts with the State of Illinois, such that she should be subjected to general personal jurisdiction here. *See Helicopteros*, 466 U.S. at 416.

## II. This Court Lacks Specific Personal Jurisdiction Over Dr. Fair

Specific personal jurisdiction exists if Plaintiff's claims arise out of Dr. Fair's constitutionally sufficient contacts with Illinois. Specific jurisdiction requires that (1) Dr. Fair has purposefully directed her activities at Illinois or purposefully availed herself of the privilege of conducting business here, and (2) the alleged injury arises out of her forum-related activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). A court's "exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Tamburo*, 601 F.3d at 701 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

### A. Dr. Fair Did Not Purposefully Direct Any Activities at Illinois

In this case, this Court lacks specific personal jurisdiction over Dr. Fair because she did not "purposefully direct" any activities at Illinois. *See Burger King,* 471 U.S. at 472. Courts have suggested three requirements for personal jurisdiction in this area: "(1) intentional conduct (or "intentional and allegedly tortious" conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt – *i.e.*, the plaintiff would be injured – in the forum state." *Tamburo*, 601 F.3d at 703 (discussing *Calder v. Jones*, 465 U.S. 783) (1984)). *See also Tamburo*, 601 F.3d at 709 n. 7 (noting *Calder* applies to cases involving alleged torts committed over

6

the Internet). In *Walden v. Fiore,* the U.S. Supreme Court further clarified that although the situs of the plaintiff's injury is relevant, it is not sufficient to establish minimum contacts. *See Walden* 134 S.Ct. 1115, 1122 (2014) (the relation between the foreign defendant and the forum state "must arise out of contacts that the defendant *himself* creates with the forum State") (internal quotations omitted). *See also, Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021) (tweeting photos of Kentucky high school students from protest at Lincoln Memorial, shaming them and urging Twitter users to identify them may have injured plaintiffs in Kentucky only because that is where they chose to live, but it was not conduct "directed at" Kentucky by defendants). The personal jurisdiction analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Finally, "the plaintiff cannot be the only link between the defendant and the forum…it is the defendant's conduct that must form the necessary connection with the forum State." *Id.* All of these principles apply with equal force in cases where intentional torts are alleged. *Id.* at 1123. *See also, Advanced Tactical*, 751 F.3d at 801.

Dr. Fair publishes on her blog, tweets, and posts to Facebook from her home and/or office in Virginia. Fair Decl. ¶ 9. She publishes articles, opinions and statements about topics of interest from all over the world. As for Dr. Fair's tweets, the majority of her followers are located outside of the U.S. – specifically, roughly 54% of the accounts following her on Twitter are in India and Pakistan – not residents of any state in the U.S. *Id.* at ¶ 11. Regarding the distribution of her Twitter followers in the U.S., only 0.1% are located in Illinois. *Id.* at ¶ 11.

Dr. Fair does not direct her online publications toward any particular forum or state. Many of her posts – whether on her blog, Facebook or Twitter – are not *directed at* anyone in particular. And when Dr. Fair did direct her tweets at a specific intended audience of Twitter users, that audience included national and international media outlets, organizations, institutions and public figures whose social networks outside of Illinois (whether in the aggregate or individually) dwarf the number of

Twitter accounts located in Illinois that may potentially have been reading Dr. Fair's tweets. *See, e.g.* Compl. Exh. L, Tweet tagging #NoMoreVictims, @ScoopWhoop, @BuzzFeedIndia and @BuzzFeedNews; Exh. N, Tweets tagging @Chronicle, @LambdaLegal, @HRC, @CatoOnCampus, @endrapeoncampus, @ChicagoMaroon, @BuzzFeed, @BuzzFeedIndia, @FedSoc, @feministcampus, @NSVRC, @end_svc, @RAINN, @APA, @AAUP, @USAforPAK, @abaesq, @NewsweekPak, @IndianExpress, @timesofindia, @htTweets, @indiaabroad, @indiaabroad2day, and @Ajitweekly1. Dr. Fair's target audience, to the extent she had a target in mind, was international in scope, not any particular regional constituency comprised only of Illinois residents. *See Bittman*, 2016 WL 2851566 at *8 (absent some plausible allegation that defendant purposefully created and exploited his own contacts with Illinois in order to injure plaintiff here, plaintiff failed to allege sufficient suit-related conduct connecting her claims to Illinois).

For all of these reasons, Dr. Fair's publications here were not directed or aimed specifically at Illinois residents or readers. Accordingly, *Young v. New Haven Advocate*, a Fourth Circuit case, is instructive. *Young* involved allegedly defamatory statements published online by a Connecticut newspaper about Virginia residents; the article was available for anyone to read over the Internet. 315 F.3d 256, 258-59 (4th Cir. 2002). The *Young* court held that, in order for personal jurisdiction to be present under *Calder*, the publisher of the online content must "manifest an intent to target and focus on" readers in the subject forum. *Id.* at 263. According to that court, if a publisher of online content does not manifest intent to reach the subject forum—even if the content is available for anyone to read, including people in the subject forum—it does not have sufficient contacts with the forum state to permit a district court to exercise specific personal jurisdiction over it. *Id.* at 264 (reversing the district court's denial of defendant newspaper and employees' motion to dismiss for lack of personal jurisdiction). *See also Tamburo,* 601 F.3d at 710 n. 10 (discussing *Young* decision and allowing that "[i]n a case involving a stand-alone Internet-based defamation, *Calder* might require a showing that the defendant intended to reach forum-state readers").

Keeping with this theme, subjecting a foreign defendant to personal jurisdiction requires not only an alleged injury in the forum state, but also "something more" directed at that state. *See Tamburo*, 601 F.3d at 706 (discussing *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997) and noting that personal jurisdiction under *Calder* was only proper due to Illinois-based injury *and* the fact that the defendant acted with the purpose of interfering with sales originating in Illinois) (emphasis in original)). *See also, Walden,* 134 S.Ct. at 1126 (mere fact that defendant's conduct affects plaintiff with connections to the forum State does not suffice to authorize jurisdiction). In *Tamburo*, for example, personal jurisdiction existed on certain counts against certain defendants where the defendants sent blast emails about the plaintiff directly to Illinois residents, while urging the readers of those emails to contact and harass the plaintiff at home. *Tamburo,* 601 F.3d at 706. The District Court also had personal jurisdiction over one defendant who contacted the plaintiff personally by email, making various threats. *Id.* That is the type of conduct considered to be "directed at" Illinois and an Illinois resident. The fact that Dr. Fair's blog posts, Tweets and some Facebook statuses were available to be read by persons in Illinois, without more, is not sufficient to establish specific personal jurisdiction. *See Young*, 315 F.3d at 263. *See also, Advanced Tactical,* 751 F.3d at 803 (noting that the connection between personal jurisdiction and the place where an email is opened is entirely fortuitous; likewise, operating even an "interactive website" requiring reader input should not open a defendant up to being sued in every forum where that website is accessible); *Shrader v. Biddinger,* 633 F.3d 1235, 1241 (10th Cir. 2011) (In considering the "something more" required, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily and particularly in the forum state."); *Johnson v. Arden,* 614 F.3d 785, 797 (8th Cir. 2010) (posting allegedly defamatory statement online about Missouri plaintiff's business "does not create the type of substantial connection between [the defendant] and Missouri necessary to confer specific personal jurisdiction.").

Plaintiff does not allege that Dr. Fair addressed her publications to Illinois readers specifically. The closest Plaintiff comes is her allegation that "[i]n Facebook posts on December 28, 2020, Fair invited people with whom she studied at UChicago to come forward with stories of harassment by Majumdar to help Jamshaid in his fight against UChicago." Compl. ¶ 26. The referenced Facebook post, in which Dr. Fair tagged twenty such individuals, is attached to the Complaint at Exhibit K. This allegation is insufficient to establish specific jurisdiction for several reasons. First, Plaintiff's claims could not possibly have arisen out of this particular post seeking information and that is not itself defamatory. *See, Advanced Tactical,* 751 F.3d at 801 (because specific jurisdiction must rest on the *litigation specific* conduct of the defendant in the proposed forum state, defendant-competitor's sales to Indiana residents not relevant to personal jurisdiction where Plaintiff failed to establish that sales resulted from defendant's allegedly misleading email advertisements); *Cook Assocs, Inc. v. E.G. Snyder Co., Inc.*, 1998 WL 139258, at *2 ("Although a single telephone call to Illinois may be sufficient to constitute a transaction of business under Section 2-209, the act of placing the call must form the basis of plaintiff's claim.") (internal citations omitted). Additionally, Plaintiff does not allege that the twenty persons with whom Dr. Fair allegedly studied at UChicago (in the 1990s) resided in Illinois at the time of Dr. Fair's post. Rather, Plaintiff alleges only, on information and belief, that "Fair specifically directed her plea to at least one person who resides in Illinois." Compl. ¶ 26. Even assuming that one person tagged does reside in Illinois, one out of twenty does not constitute purposeful direction at Illinois. *Advanced Tactical,* 751 F.3d at 803 (sending misleading emails to a list of subscribers that included Indiana residents, among others, did not show that the defendant somehow "targeted" Indiana). Accordingly, Dr. Fair did not "express[ly] aim" the allegedly defamatory statements at the forum state. *See Tamburo*, 601 F.3d at 703. The "something more" required to subject her to personal jurisdiction here is conspicuously absent. *Id.* at 706 (internal citations omitted).

### B. Subjecting Dr. Fair to Specific Personal Jurisdiction Would Violate Notions of Fair Play and Substantial Justice

Dr. Fair did not set foot in Illinois during the time period relevant to Plaintiff's Complaint. Allowing Plaintiff to drag her into court here, based on internet posts published to an international audience about a topic of interest involving not only UChicago and one of its professors, but persons and institutions in positions of power all over the world, would place a substantial burden on Dr. Fair. *Tamburo*, 601 F.3d at 709 (citing *Burger King*, 471 U.S. at 477). In general, "the weaker the defendant's contacts with the forum state are, the less likely it is that exercising jurisdiction over that defendant is appropriate." *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759-60 (7th Cir. 2010). Indeed, where minimum contacts are lacking, this Court "need not go further in the personal-jurisdiction analysis." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014).

### CONCLUSION

For the foregoing reasons, Defendant C. Christine Fair respectfully requests that this Court grant her Motion to Dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Dated: April 13, 2021

Respectfully submitted,

　　/s/　　Jena L. Levin　　　　　　

William J. McKenna, ARDC# 3124763
Jena L. Levin, ARDC # 6300341
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654-5313
(312) 832-4500

*Counsel for Defendant C. Christine Fair*